Good morning. May it please the Court, Caitlin Howard appearing on behalf of Appellant Stanford Wall. I'd like to reserve two minutes, and I will watch the clock. I plan to focus my arguments, unless the Court has questions, on the second and third issues raised in my brief, the Sixth Amendment issue and the prosecutorial misconduct issue. The District Court, when it allowed... Let me ask you a sort of preliminary question.  Given the District Court's ruling that the defense, later in the trial, could raise the blind mule issue, why didn't the defense call a blind mule expert, rather than sort of thinking it might be that the government's expert could testify about blind mules? I appreciate the Court's question, and that was actually something I wanted to address as well. I know that the government raised the issue in its brief, in its responsive brief, but I would point the Court to the Illuminate hearing, when the District Court and defense counsel had an extensive conversation about the admission of blind mule testimony, and the District Court, and I'm going to quote here from the ER... I remember what he said. I know about blind mules, you know, they're very rare and all that, but the District Court did say, I'll let you raise this issue later. Your Honor, nothing that happened between the Illuminate hearing and the trial, and the conversation that was had at the Illuminate hearing was extensive. Nothing that happened between that and the trial and the testimony that came out changed the Court's ruling. And in the Illuminate hearing, the Court said, can you point me to a Ninth Circuit case where they have reversed the District Court for not admitting evidence from the defense of a blind mule expert? And there is no such case, and the Court said, well, until the Ninth Circuit tells me otherwise, I'm going to exclude this under Rule 403. That was a clear ruling that the Court was not going to allow even a single question about blind mules to be introduced at trial. It was not related to specifically the cross-examination. The Court made it clear, was there a Ninth Circuit case that said the defense could bring in or introduce blind mule testimony? Weren't there effective, in the defense examination, weren't there effectively blind mule questions? That is to say, without using the phrase blind mules, don't, isn't it true that people come across without knowing and so on? No, Your Honor, I don't believe that that testimony came in through any witness. It was precluded. Well, no, no one used the word blind mule, but there was testimony about the value of the drugs, and there was testimony about whether, I think there was an argument made, you wouldn't let someone have that amount of drugs if they didn't have some trustworthy status, and your client's defense was, I didn't know it was there. So, but no one ever used the blind mule, but I guess also, too, in terms of framing your argument, when the original objection came about, did, was it posed as a confrontation clause objection there? I don't think it was. Your Honor, it was asked whether or not the court would permit cross-examination of the drug value expert about the existence of blind mules, and the court declined, and then defense counsel said a second time, and I was actually defense counsel, then I said a second time, then I said a second time. You're not going to talk about yourself in the third person. It feels a little odd. So I did ask the court again, would the court permit even a single question about the existence of blind mules, and the court, that was when the court asked for a Ninth Circuit case and said that he would not allow any testimony about blind mules from the defense. But it was after that that the judge said, but I'll let you raise it again. Am I correct? In a separate hearing, the judge said that that was his ruling, but that if something changed, it could be re-raised, but nothing changed. The evidence, and because the conversation was so extensive at the inlimited hearing, the government basically explained exactly how it planned to argue, the defense raised the objection. In the Southern District, these cases are tried in a very similar way, and the experts testify in a very similar way, and so nothing changed between that hearing and the trial or the trial testimony. And so I do think that the issue is preserved. Counsel, may I ask for some clarification? I just want to make sure I understand your position. Is it your position that because blind mules exist, evidence of drug value is inherently not probative, and almost always inadmissible in importation cases under Rule 403? Your Honor, in this case analysis, and the 403 analysis is a case-by-case analysis. In this case analysis, the existence of blind mules combined with the other circumstances of the case created a situation where the probative value of that testimony was so little. And I'm not going to say there's no probative value to the value testimony, but it certainly, the known existence of blind mules certainly changes the calculus of how probative the value testimony is. Because if the inherent argument is that the drugs are so valuable that nobody would entrust them to an unknowing courier, but then we start to see about ten years ago and then more and more frequently, oh, but sometimes they actually do entrust them to unknowing couriers in this scenario, in that scenario, and suddenly the cases and the scenarios are growing and increasing. It becomes less and less probative as time goes on, and we see all the different types of schemes drug trafficking organizations are using. You'd agree that the government put in a lot of other evidence that circles around that blind mule theory. The fix-a-flat, for example, and no tools. The time that was spent where the car was out of sight at the car wash and when they're inside eating at a restaurant. And you can tell they're circling that issue by saying, no, no, couldn't have happened. And I agree with the court, but I do think that circling around the issue with the jury but not giving the jury that foundational piece of information, which is blind mules do exist, but here are all the reasons, and the government could have made this argument, blind mules do exist, but here are all the reasons that this person is not a blind mule, but that's not the argument that they made. Instead, they referred to Mr. Wall's theory of defense as pure speculation and repeatedly argued that the values inherently, and while they didn't use the word nobody would entrust, for the jury not to have the foundational information that blind mules do exist, the way that the government argued it certainly suggested that this valuable commodity would not be entrusted to an unknowing courier. And that argument is misleading to the jury because we actually do know that at times drug trafficking organizations do use unknowing couriers to smuggle their drugs. So if just establishing that there is a blind mule out there, let's say there's only one out in the whole world, but just establishing that would have changed the whole calculus of the trial? Your Honor, I think that's a difficult question to answer because there have been more than one blind mule. It's not that kind of unicorn rare at this point with government investigations and discovery that's provided, and that conversation was also had. We can't put a number on the number of blind mules. Can you put a number on the value of the drugs? I think the drug value expert did put a number. No, I'm saying the value of the drugs that are brought in by blind mules and the type, that is, bulk versus less bulk and so on. I think that the government would concede, based on the memo that they produced, that it's bulk. The value is significant in the blind mule cases as well. The quantity of drugs here, I believe it was around 20 kilograms, is not so significantly, so much more significant than drugs in those cases either. Well, okay, I know you wouldn't concede this necessarily, but I'm just going hypothetically. There's a case called Urena that holds that there is no confrontation problem when a district court permits CROSS as to, one, issues covered indirect, and two, matters of bias and motivation, which that was allowed. Both of those were allowed. Your Honor, there wasn't, but I would argue that, and I used this court's three-factor test from Larson. I would argue under that first factor, the question is, is the requested CROSS examination or is the evidence relevant? And I would argue that the only relevance of the drug value expert's testimony is knowledge. That is the inference, that is the argument that the prosecutor is going to make. And so because the drug value expert is a law enforcement expert testifying about the value of the drugs, and the only relevance of that is knowledge, then it would be relevant and it would be within the scope of direct examination to ask questions that also go to whether or not the drug value proves knowledge. Well, okay, so hypothetically, because we don't conference before we come to court, so I don't know. But hypothetically, let's assume that we agree with you, that there's a confrontation clause error. And my understanding would be that that would be subject to the Chapman harmless error analysis. Am I right so far? Yes, Your Honor. Okay, so why couldn't, why isn't it slim and none and slim left town that there would have been, that we would have a different result here? Your Honor, I think that the district court addresses this during jury instructions and again in the post-trial motions. The district court describes this case and says this is not a slam dunk case during jury instructions. He says that it's a case built entirely on circumstantial evidence and that the government came in to the case knowing that it was going to be difficult and challenging to prove. This is at the jury instruction conference after the evidence had come in. Okay, but after we hear all the evidence, I can look at the evidence. He had, your client had inconsistent border crossing history. He did not travel on a predictable schedule. He told no one he was traveling. He used different vehicles with no predictable pattern. No tracking device was found with the meth. So he was way from the car for a limited period of time. The only times where the car was out of his sight was at the car wash and the pizza restaurant. His timeline contains gaps and is somewhat bizarre, one could say. He arrived in Mexico between 3 and 3.30. The purpose of his trip was to drop off, quote, a succulent, some food, and a box of rags at the homes of his wife's family members. Out of the roughly six hours he spent in Mexico, excluding the three hours he spent waiting at the border, only spent moments dropping off the assorted goods, about five to ten minutes, while then drove to the car wash arriving about 4.30 and left his car while he got ice cream. Then he went to a restaurant and pizza for one hour after he went to Eddie's and got a torta while got in line to cross the border at around 9 o'clock p.m. and waited for three hours before reaching the port of entry at midnight. His plan was to drive home, which would have taken three more hours. So that is circumstantial evidence, but it's a lot of it. After there's been a verdict, we have to give the inferences from that. How do you overcome the harmless error analysis? Your Honor, I would point out to the court that Mr. Wall presented evidence by witnesses, three separate witnesses, who corroborated significant parts of that post-arrest story, that he had gone down to Mexico to visit family, that he had dropped off rags, a succulent, food to family members. I mean, you're having a hard time keeping a straight face over dropped off rags and a succulent. Your Honor, I was just trying to remember that. But the testimony supported it, that the witnesses said that he had come down, that he had stopped at their homes, that it was not unusual for the family that lived in the United States to go to Mexico and drop off items that they had collected from their church. That testimony is in the record, and it's supported not by one witness, but by three different witnesses. His son, who saw him leave that morning and watched him fill the car with things, his wife's family member, the first home he stopped at, the second home he stopped at, and then the second home he stopped at, that woman ran the taco shop and confirmed that he had stopped there before he went back across the border. While I understand that the government presented the post-arrest statement as kind of this implausible story, there certainly was evidence in the record that corroborated the statement. And in addition to that, the case agent did some investigation and went through Google Maps and actually found the car wash, and then next to the car wash found an ice cream shop. And so also corroborating kind of an odd part of that post-arrest story, according to the government. And so I think that when you look at that, and then you look at also the drugs were found in the spare tire, and also the spare tire, the government's car expert testified that the spare tire did not match the other four tires, and that it wasn't in fact a tire that would have been put on that car at the time it left the factory, the spare tire. It wasn't the factory tire. Doesn't that cut against you? No, Your Honor, I don't think so. If the argument is that this person didn't know that the drugs were in the car, and that somebody just put the spare tire on the car, say, while he was at the car wash, I think that... And that he wasn't traveling with the real spare tire. He wasn't traveling with the spare tire that the car came with or that matched the other tires on his car. Most people driving a car, the tire would match one of those two things. Okay, so you're in overtime right now. Let me ask if... I do have one more. Okay, go ahead, and I'll give you two minutes for rebuttal. Thank you. You have an assumption, unstated, that that expert on valuation is knowledgeable about blind mules. Was there anything in the record that shows that? Your Honor, I think that this... Yes, I think when the expert was qualified, she testified that she had 15 years of law enforcement experience, that she had primarily investigated cases of drug smuggling back across the border, that she had investigated drug trafficking organizations through wiretap use of confidential informants, that she had herself been involved in 800 investigations at the port of entry, and that 500 of those, she was the primary case agent. So I think given all of that information, she could have answered the question of whether or not she knew that drug trafficking organizations had used blind mules. I think that that is within the realm of her expertise, and certainly it was the court, the government, there was no dispute that that is a fact at the border. So I think it would have been within the realm of her expertise. What if she had... since she hadn't talked to the expert, what if she had said, well, yeah, I'm aware they're used, but not aware of anyone using them in this amount. Where does that leave you? That's kind of a don't ever ask a question you don't know the answer to. Your Honor, and she could have answered that way, but I think that then it would have given the defense the opportunity in closing argument to at least say to the jury, look, the government doesn't think that this person is a blind mule, but we know that blind mules exist, and we know that this is in a spare tire, and we know he stopped at the car wash, and at least that foundational fact is there to combat the government's argument that this theory of defense was, in their words, pure speculation. Okay, thank you. Thank you, Your Honor. All right, I'll give you two minutes on rebuttal. Thank you. May it please the Court, Daniel Zip on behalf of the United States. Good morning. Good morning. The District Court was within its discretion in limiting the cross-examination in this case for a couple reasons. First and foremost, it was beyond the scope of the direct examination to get into the issue of blind mules. All that Agent Johnson testified to was how much meth is worth per pound, how much was in the car, and what the total value was. She never touched on blind mules in direct, and under this Court's case in Garola, that alone is grounds for the Court to limit the cross-examination. So, you know, I understand the point that really if you want that testimony in, you can't count on using someone else's witness to get it in as far as that goes, and the word would never came up. But I was a trial judge, and I think you have two other trial judges that were here. I probably would have let it come in, and I don't think it would have made any difference one way or the other, but so now we're here. So tell me, was it a confrontation clause violation, and how did the Court look at it throughout? And I think Judge Wallach, your friend on the other side said that the judge at the district level made it clear that no way, no how was there going to be any evidence of blind mules, and that's why she didn't call her own expert. Judge Wallach had a different reading of the record. Were you there, too? I was not, Your Honor. Okay. So how do you look at the record? To answer the second half of that, I don't think the record supports the idea that the Court ruled that the defense could not bring their own expert. If you look at that ER-20, when that discussion occurred, it immediately followed the defense's request to ask one question about blind mules of this witness, and that's when the Court said, Are you aware of any Ninth Circuit cases that have reversed the Court for not allowing blind mule testimony? In the context, it was referring to the cross-examination. The Court never at any point said, I'm going to prohibit you from calling your own witness. And, in fact, this Court in Castellanos-Garcia held that even if a court is skeptical about whether something would be admissible, the defense still has to try. And the defense in this case never provided notice of any expert witness. And at the motion for a new trial, hearings admitted that she didn't believe that she needed to call her own witness. So I don't think the record supports the idea that the Court had ruled out blind mules coming in altogether. All it ruled out was you can't use the government's witness who testified only to something separate to sort of bring this in to help your case. As to the confrontation clause question, Your Honor, I think this Court, the Supreme Court, has made clear that the confrontation clause doesn't give the defense to cross-examination that is effective in whatever way and to whatever extent the defense might wish. Ultimately, it's the district court that has the discretion to decide how to limit cross-examination. And even if Your Honor may have allowed the question, if you were sitting there, ultimately it's a question of abuse of discretion for this district court. Was it illogical or implausible for the district court to limit cross-examination to the issues that were raised on direct? And we don't believe that it was. In the context of this, the government says in its brief that the allowing cross-exam would have created a mini-trial on the side. What do you mean by a mini-trial? It sounds like a hearing to me rather than a mini-trial. Well, what the prosecutor said when this first came up was, if the defense wants to ask those questions about the existence of blind mules in other cases, then he should be permitted to ask questions about what are the characteristics of those. So again, that's another basis for the court to exclude this on cross-examination. Now we're talking about characters. But how is that a mini-trial? I mean, I just don't see. I know there are such things as mini-trials, particularly in civil cases where preliminary issues are determined. But this doesn't strike me as anything like that. It's just five minutes of herring off into the field. Well, I guess I'm going to not defend the district judge, but I could envision if the question was, what about in case of Davis v. USA v. Davis? And there you had someone that was transporting, you know, X amount of drugs, and there was, so then the person acknowledges, yes, that case exists. But then you have to come back and say, okay, but these were the factors in that case why the jury may have found a blind mule or why that testimony was allowed. So if you get into individual cases where blind mules existed in cases with this amount of drugs, then you have to go look all those cases up, then you have to factually distinguish all of them if you open up the whole can. The one question doesn't open up a whole can of Pandora's box. Sure, and whether you characterize it as a mini-trial or just an extensive discussion about other cases, I think what the court was doing was saying, you know, exercising its discretion to keep something that's confusing and delaying out of what is very straightforward testimony about the value of methamphetamine. Counsel, let me, I apologize for interrupting, but I wanted to stick with the jury confusion or mini-trial. Here's my concern. I'll be frank with you is do the concerns about jury confusion or mini-trials outweigh Wahl's interest in asking about blind mules on cross? You're cutting them at the knees. No, Your Honor. I think if we're in the confrontation clause world, there's a difference between restricting a defendant from impeaching the witness herself and restricting the defense from putting in their own helpful evidence through the government's witness. It's our position that this doesn't even implicate the confrontation clause in this context because there's nothing, the defense refers to it as impeaching the testimony, but it's not, you don't impeach testimony, you impeach the witness, and the district court did not restrict the defense in any way from impeaching her as to whether she was right about the value of drugs, whether her sort of calculations were correct, or whether she was relying on reliable information. Would you agree the court left the door open? For a blind mule expert? For an expert, blind mule expert from the defense. I don't think there's anything in the records that suggests that the court was excluding the defense. Well, the court kind of did say a little bit like what I just did, hey, that working is kind of slim and none and slim left town. You know, it doesn't come up very much, and it doesn't really work, and we know that da-da-da-da-da-da, sort of cast a little bit of a negative attitude on that, but did say the words, you can bring your own person in. I don't know that he said it as explicitly as that, but on balance, I don't. Well, I'm just trying to, I think that's the way your friend on the other side sort of took it. Right, but again, as this court in Castellanos Garcia, which was even more skeptical from the district court, it doesn't mean that you don't, you have to still attempt at some point to put in the expert, and there's a reason why the defense wouldn't put in the expert in this case, because the expert would testify, yes, there's some blind mules somewhere, but they don't share any of the characteristics with his defendant, who had an unpredictable crossing pattern, who, you know, that access to the tire could only be gotten from inside the car, you know, which sort of goes to your point, Your Honor, that ultimately at the end of the day, this would all be harmless anyway, because even if the defense had been allowed to ask, do blind mules exist, then the prosecutor would have asked, do they share any of the characteristics with this case, and we'd be left in essentially the same position that we are here. So if I understand your argument, it's not a confrontation issue, but even if it were, the harmless error would save the conviction. I think it's not a confrontation clause issue. Even if it were, under the three-factor test, the court, the information about blind mules was not relevant to impeaching the witness. The court had a legitimate interest outweighing the introduction of that testimony. I have another question for you that I thought of earlier, and that is doesn't the value of the drugs implicate something other than just blind mules? I mean, telling the jury that 44 pounds of meth is worth this much must have some other implication, statutory or otherwise. This court has recognized repeatedly that that value is circumstantial evidence of the defendant's knowledge of the drugs, that you're more likely to know that there's $100,000 on your back seat than you are $1,000, and that was sort of the limit of the circumstantial evidence. And the issue in the trial was knowledge, right, undisputedly. Right. I mean, not that the drugs – the drugs were what the drugs were. There wasn't really – the amount isn't really disputed. It's just did the defendant, Mr. Wall, know? Right. And he put in testimony that – did he testify? He did not know. All right. So his lack of knowledge came in how? Through all of the circumstantial evidence that you outlined in the harmless analysis. But not actually his saying, I didn't know. Correct. It was his implausible story, the sort of amount and value of the drugs, the way that they were stored. No, but did Mr. Wall testify at trial? No, he did not. Okay. But again, to your point, I think this court has held in Sanchez-Lopez that the price of drugs is probative to knowledge of those drugs, and that's why we put the value expert in, and it was just sort of one brick in our overall circumstantial case as to how he must have known. And the fact that blind mules exist somewhere doesn't make that testimony unfairly prejudicial. Happy to answer any other questions the court might have. I don't think we have any additional questions. Thank you. You're free to use your time, but you don't have to. I just want to address two points quickly. First, the relevance being of the drug value expert's testimony knowledge. I do think that a question about the existence of blind mules is impeachment of that value and the purpose of the value, which is to prove knowledge, the relevance of it. It's impeachment by contradiction. The government's saying, oh, we're going to offer this witness, they're going to tell you how valuable these drugs are, and then you're going to infer from that that Mr. Wall must have known about the drugs. You had notice of their expert, and you could have noticed them an expert, but you didn't, right? I did not notice an expert, Your Honor, but I do think that this was squarely within the scope of the direct examination. The only relevance of that testimony is knowledge. And so a question about the fact that actually that value doesn't necessarily prove knowledge because drug trafficking organizations do use blind mules. Did the witness say that someone that has that amount of drugs must have knowledge? No, but that was the only relevance of her testimony, was to draw that inference in closing argument. And so cross-examination of that witness, the only real significant cross-examination of that witness, nobody cares if the drugs are worth $45,000 or $85,000 or $50,000. The only real way for the jury to weigh how heavily to consider the probative value of that evidence is for the jury to know that in fact drug trafficking organizations have used blind mules. So the value of the drugs is actually not that probative. It's directly relevant to that particular witness's testimony. How can you say that? I mean, surely a juror in applying common sense and knowledge of the world is going to know the difference between, say, 20 kilos and a quarter of an ounce that was found on the floor that somebody had dropped through their window, or $5 worth of drugs versus $50,000 worth of drugs, leaving aside your other issues. They can just look at that and apply real-world knowledge. Yes, Your Honor, but I think that the fact that the government brought a witness to testify about it is what creates the need to impeach by contradiction that witness. And just one other point, Your Honor. But impeaching by contradiction would be saying to the witness, oh, come on, isn't it true that this stuff sells, that 44 kilos sell on the street for, or 20 kilos sell on the street for $1.98 and you said $50,000? That would be contradiction. Well, I think it's also contradiction to inquire of the witness whether or not the drug trafficking organization, whether or not the value of the drugs actually might not mean knowledge because drug trafficking organizations hide those drugs in people's cars who don't know. All right, you've gone over, over, uber over. Thank you both for your argument in this matter. It will be submitted at this time.
judges: CALLAHAN, Wallach, ALBA